UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:25-CV-00138-RSE

TRAVIS T.                                                                    PLAINTIFF

VS.

FRANK BISIGNANO,
*Commissioner of Social Security*[1]                                         DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

The Commissioner of Social Security denied Claimant Travis T.'s ("Claimant's") application for disability insurance benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant filed a Fact and Law Summary and Brief. (DN 17; DN 18). The Commissioner filed a responsive Fact and Law Summary. (DN 20). Claimant filed a reply. (DN 21). The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 13).

## I. Background

Travis T. ("Claimant") applied for disability insurance benefits under Title II of the Social Security Act on June 6, 2022. (Transcript, hereinafter ("Tr."), 186-89). Claimant's application alleged his disability began on November 15, 2020 due to anxiety, depression, flat feet, leg injury,

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. He is automatically substituted as the named defendant pursuant to Fed. R. Civ. P. 25(d).

and sleep apnea. (*Id.*; Tr. 221). The Commissioner denied Claimant's applications at the initial and reconsideration levels. (Tr. 87-90, 98-101).

At Claimant's request, Administrative Law Judge George Oetter ("ALJ Oetter") conducted a hearing in Macon, Georgia on December 4, 2023. (Tr. 41-42). Claimant and his representative appeared by telephone (Tr. 43). An impartial vocational expert also participated in the hearing. (*Id.*).

Claimant provided the following testimony. At the time of the hearing, Claimant was forty years old. (Tr. 44). He is a high-school graduate. (*Id.*). He has joint custody of his fifteen-year-old son and full custody of his ten-year-old son. (Tr. 44-45). Though he cannot do "a whole lot" with his children, he plays card games, board games, and video games with them, and tries to attend and participate in their school activities. (Tr. 46).

Claimant explains that pain in his foot causes his leg to get weak. He estimates that his average pain is a seven on a ten-point scale. (Tr. 54-55). To help with standing and walking, Claimant uses shoe inserts, crutches, an ankle brace, and a knee scooter at home. (Tr. 49). When grocery shopping, Claimant leans on the cart for support. (*Id.*). He takes medication for anxiety and depression but refuses pain medication or anything that could become addicting. (Tr. 51). When asked what limits his ability to work, Claimant identifies his anxiety, depression, and trouble sleeping. (Tr. 55). He estimates that he only gets two to three hours of sleep per night and reports taking naps several days a week. (*Id.*).

ALJ Oetter issued an unfavorable decision on March 19, 2024. (Tr. 22-36). He applied the Commissioner's five-step evaluation process for determining whether a claimant is disabled, 20 C.F.R. § 404.1520, and found as follows. First, Claimant has not engaged in substantial gainful activity since November 15, 2020, his alleged onset date. (Tr. 24). Second, Claimant has the

following severe impairments: bilateral posterior tibial tendon dysfunction, left lower extremity tendinopathy, obesity, depressive disorder, and anxiety disorder. (Tr. 24). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 25-26). At the fourth step, ALJ Oetter determined Claimant has the residual functional capacity (RFC) to perform "light work" as defined in 20 C.F.R. 404.1567(b) with the following limitations:

> He can lift, carry, push, and/or pull occasionally up to 20 pounds and frequently up to 10 pounds. He can stand and/or walk six hours in an eight-hour workday and sit about six hours in an eight-hour workday. He can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds and can have no exposure to hazards such as unprotected elevations or commercial driving. He can understand, remember, and carry out simple instructions; is capable of social interaction consistent with the level of giving or taking directions; can adapt to any changes in the workday routine; should have occasional public interaction; and no production rate pace of an assembly line job.

(Tr. 27-33). Additionally at Step Four, ALJ Oetter found that Claimant can perform his past relevant work of lot attendant, as this work is not precluded by his RFC. (Tr. 33). Because of his Step Four findings, ALJ Oetter did not proceed to Step Five of the sequential evaluation process.

ALJ Oetter concluded Claimant was not under a disability, as defined in the Social Security Act, from November 15, 2020, through the date of the decision. (Tr. 36). Claimant appealed Oetter's decision. (Tr. 180-81). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Oetter's decision. (Tr. 6-8). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v.*

3

*Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

<u>III. Analysis</u>

Claimant presents two claims of error relating to ALJ Oetter's RFC analysis. First, Claimant argues ALJ Oetter failed to consider Claimant's adaptation limitations from Step Three

in assessing Claimant's RFC. Second, Claimant alleges ALJ Oetter failed to incorporate the persuasive limitations of consultative examiner, Jennifer Fishkoff, in the RFC.

### A. ALJ Oetter's Evaluation of Claimant's Limitations in Adaptation

Claimant argues ALJ Oetter opined at Step Three that he had a moderate limitation in adapting and managing himself but did not consider this moderate limitation when later determining Claimant "can adapt to any changes in the workday routine" in the RFC. (DN 18, at PageID # 1110-11). Compounding this error, Claimant argues, is ALJ Oetter's crediting of medical opinions supporting limitations on adaptation in the RFC. (*Id.* at PageID # 1112). Because ALJ Oetter's RFC evaluation is silent as to adaptation and management, Claimant argues he failed to create an accurate and logical bridge between the evidence and his conclusions, which results in reversible error. (*Id.* at PageID # 1112-13).

The Commissioner responds that ALJ Oetter properly used his Paragraph B ratings in Steps Two and Three but had no obligation to adopt such ratings in the RFC. (DN 20). Because ALJ Oetter stated that his RFC assessment reflected the degree of limitation he found in the Paragraph B mental function analysis, the Commissioner asserts he sufficiently accounted for Claimant's moderate limitation in adapting and managing herself by implementing mental limitations. (DN 20, at PageID # 1128). The Commissioner emphasizes that "a fair reading" of ALJ Oetter's decision reveals him providing specific references to medical and other evidence to support his conclusions. (*Id.* at PageID # 1128-29). The Commissioner also clarifies that ALJ Oetter only partially credited the opinion evidence that Claimant alleges supports further limitation as to adaptation. (*Id.* at PageID # 1129). Yet even if he had found the medical opinions fully persuasive, the Commissioner points out that ALJs are not required to adopt every opined limitation or finding.

(*Id.* (citing *Reeve v. Comm'r of Soc. Sec.*, 816 F. App'x 267, 275 (6th Cir. 2015); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009)).

Claimant, in reply, emphasizes that ALJ Oetter should have incorporated the physicians' limitations as to adaptation into the RFC or explained why he did not do so. (DN 21, at PageID # 1141-42).

At Step Three, in analyzing whether Claimant's mental impairments met or equaled a listed impairment, ALJ Oetter considered the four broad functional areas known as the "paragraph B" criteria. He found Claimant had "mild limitation" in "understanding, remembering or applying information." (Tr. 25). But he found Claimant had "moderate limitation" in the other three areas: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 25-26). The area of "adapting and managing oneself" refers to a claimant's abilities to "regulate emotions, control behavior and maintain well-being in a work setting."[2] 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 12.00(E)(4).

In determining Claimant had moderate limitation in adapting and managing herself at Step Three, ALJ Oetter considered that Claimant "did not allege any limitations in that domain." (Tr. 26). He further considered Claimant's sister's statement that Claimant can manage stress and changes in routine and is independent in activities of daily living, as well as Claimant's testimony that he cares for his young children. (*Id.*). ALJ Oetter also discussed contrary evidence, such as Claimant's poor hygiene and unkempt appearance at appointments and examinations and findings of occasionally depressed mood. (*Id.* (citing Ex. 3F, 6F)). Recognizing that Claimant's symptoms

---

[2] The Listing provides examples which may be considered in evaluating this functional area, including: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. *Id.* at (E)(4).

improved with mental health treatment, notably after starting medication, ALJ Oetter concluded the "totality of the evidence supports no more than moderate limitations in adapting or managing oneself." (*Id.*).

At the end of his Step Three analysis, ALJ Oetter clarified that the Paragraph B limitations were not an RFC assessment and that the mental RFC at Step Four "requires a more detailed assessment of the areas of mental functioning." (*Id.*). He indicated his RFC assessment "reflects the degree of function" he found in the Paragraph B mental function analysis. (*Id.*). Later, in assessing Claimant's RFC, ALJ Oetter implemented mental limitations, including that Claimant "can understand, remember, and carry out simple instructions, is capable of social interaction consistent with the level of giving or taking directions; can adapt to any changes in the workday routine; should have occasional public interaction; and no production rate pace of an assembly line job." (Tr. 27).

At first blush, it seems contradictory that ALJ Oetter opined that Claimant had "no more than moderate limitation" in adapting and managing himself at Step Three and then later finding Claimant "can adapt to any changes in the workday routine" in the RFC. But nothing in the regulations requires an ALJ to adopt their Step Three limitations in the subsequent RFC assessment. That is because Step Three and the RFC serve different functions. Step Three regulates a "narrow category of adjudicatory conduct." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 649 (6th Cir. 2006) (en banc). It "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Id.* The RFC is a subsequent determination distinct from Step Three. *See Turbeville v. Colvin*, No. 1:12-CV-00061, 2014 WL 6605483, at *10 (M.D. Tenn. Nov. 19, 2014) ("[Step 3 and the RFC] are separate steps and a finding at one step does not necessarily equate to the same finding being made at a

later step."). The RFC "requires a more detailed assessment by itemizing the various functions contained in the broad categories found in Paragraphs B and C." SSR 96-8p, 1996 WL 374184, at *4.

Therefore, an ALJ's finding that a claimant has "moderate" limitations in the Paragraph B criteria at Step Three, does not necessarily correlate to an identical limitation in the RFC. *See, e.g., Thorpe v. Comm'r of Soc. Sec.*, No. 4:23-CV-2-CEA-DCP, 2023 WL 8705497, at *9 (E.D. Tenn. Nov. 20, 2023) ("[T]he ALJ is not required to provide specific RFC accommodations for limitations in the paragraph B criteria."); *Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) (finding that "the ALJ does not have to include paragraph B finding in his RFC finding" and concluding that "the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a 'moderate limitation in concentration, persistence, and pace' in his residual functional capacity finding at steps four and five"); *Bailey v. Astrue*, No. CIV.A. 10-227-JBC, 2011 WL 3880503, at *2 (E.D. Ky. Aug. 31, 2011) ("The RFC assessment takes into account all of the relevant evidence in the case record, ... and the ALJ was not required to specifically adopt 'paragraph B' findings in his development of a complete and accurate assessment of Bailey's mental impairment.") (citing SSR 96-8p, 1996 WL 374184); *see also Fellows v. Comm'r of Soc. Sec.*, No. 1:14-CV-506, 2015 WL 4134699, at *6 (W.D. Mich. July 8, 2015) (agreeing with the court in *Pinkard*).

ALJ Oetter, accordingly, was not required to incorporate his Paragraph B limitation as to Claimant's ability to adapt and manage himself into the RFC. He was, however, required to consider the effect of Claimant's moderate limitations in adapting and managing himself in the mental limitations adopted in the RFC. The Court finds he did.

To start, ALJ Oetter's RFC determination is not silent as to Claimant's abilities to adapt and manage himself, as Claimant alleges. ALJ Oetter considered and discussed Claimant's mental limitations in the context of his subjective complaints, treatment history, objective medical evidence, assessments from medical professionals, and a third-party report from Claimant's sister. ALJ Oetter discussed Claimant's subjective testimony that he gets sidetracked and forgets appointments and medication, that he takes medication for anxiety and depression, and that his ability to work is limited by his mental impairments. (Tr. 28). He then determined that the evidence did not support Claimant's alleged degree of limitation. (*Id.*). ALJ Oetter identified how Claimant parents two children, is independent in personal care, prepares simple meals, does light household chores, drives a car, goes out alone, shops in stores, socializes over the phone and in person, has no problem with authority figures, and can manage stress and changes in routine. (*Id.* (citing Ex. 9E)). And ALJ Oetter again noted how mental health treatment records show Claimant "made progress toward his treatment goals, particularly after starting medication." (*Id.* (citing Ex 3F, 10F)).

Turning to the objective medical evidence, ALJ Oetter discussed Claimant's treatment with Carissa Rodden. (Tr. 29-30). ALJ Oetter discussed Ms. Rodden's description of Claimant's initial presentation as unkempt, disheveled, slow speech, a depressed, anxious, and fearful mood and affect, his being near tears, and reportedly claustrophobic. (*Id.* (citing Ex. 3F). ALJ Oetter noted that after Ms. Rodden's initial evaluation, Claimant did not return for about nine months, but then began seeing Ms. Rodden monthly. (*Id.*). Overall, ALJ Oetter considered that Claimant's mental status examinations across different providers were "unremarkable" (Tr. 30-31), that he reported improvement with medication, and that he reported no difficulty getting along with others and appeared calm, friendly, and cooperative at visits. (Tr. 30). ALJ Oetter's thorough discussion of

9

both subjective and objective evidence from the record relating to Claimant's mental impairments traces a clear path of reasoning to his finding that Claimant "can adapt to any changes in the workday routine."

ALJ Oetter's evaluation of the medical opinions of record does not change this conclusion. Claimant oversimplifies ALJ Oetter's analysis by claiming that his evaluation of the opinion evidence supported and required adaptation limitations. Claimant highlights how ALJ Oetter found Ms. Rodden's opinion that Claimant had functioning impairment in daily living/personal care to be "partially persuasive." Claimant notes ALJ Oetter's consideration of Ms. Rodden's exam findings that included unkempt and disheveled appearance, slowed speech, and a depressed, anxious, and fearful mood and effect. But, as ALJ Oetter noted, Ms. Rodden's opinion is not stated in "vocationally relevant terms and is vague as to [C]laimant's functional abilities." (Tr. 31). Ms. Rodden did not opine as to any specific functional limitation related to Claimant's ability to adapt and manage herself. ALJ Oetter's analysis of her opinion, accordingly, did not support inclusion of a functional limitation as to adaptation.

The same is true for ALJ Oetter's analysis of Dr. Fishkoff's opinion. Claimant points to ALJ Oetter's note that Dr. Fishkoff's opinion as to Claimant's "ability to handle frustration is consistent with mental health treatment notes showing he reported increased symptoms with subjectively defined stress." (Tr. 31). But, overall, ALJ Oetter determined Dr. Fishkoff's opinions were "not highly persuasive" as they were largely based on Claimant's subjective complaints. (Tr. 31-32). ALJ Oetter further found Dr. Fishkoff's remaining limitations were not consistent with her exam findings or the overall evidence. (*Id.*). By homing in on ALJ Oetter's single statement about the consistency of Claimant reporting increased symptoms with subjectively defined stress, Claimant fails to recognize ALJ Oetter's overall determination that Dr. Fishkoff's opinion was not

highly persuasive. ALJ Oetter's analysis of Dr. Fishkoff's opinion, accordingly, did not necessitate any functional limitation regarding adaptation.

Lastly, Claimant emphasizes ALJ Oetter's determination that the prior administrative medical findings, including Claimant's ability to adapt to work demands and situational changes that are gradual and occasional, were partially persuasive. However, ALJ Oetter noted that such a restriction was "unclear in some particulars, such as how to apply . . . 'gradual and occasional' in the context of DDS-stated capacity job environments and both simple and detailed tasks." (Tr. 32). Because ALJ Oetter only found these opinions partially persuasive and his RFC was more restrictive than those opined by the State agency physicians, his analysis does not lend support to additional functional limitation as to adaptation.

For these reasons, the Court finds ALJ Oetter's determinations regarding Claimant's ability to adapt are supported by substantial evidence in the record and comply with the applicable regulations.

B.   ALJ Oetter's Evaluation of Jennifer Fishkoff's Opinion in the RFC

Claimant submits that ALJ Oetter failed to adopt limitations he found persuasive from Dr. Fishkoff's opinion, namely her opined limitation as to Claimant's concentration deficits. (DN 18, at PageID # 1118-19). ALJ Oetter's explicit rejection of some restrictions (i.e., social interaction and understanding), Claimant argues, translates to ALJ Oetter finding the remaining limitations persuasive. Claimant finds an "unresolved discrepancy" in ALJ Oetter determining Dr. Fishkoff's restriction that Claimant is severely limited in his ability to sustain attention to perform even simple and repetitive tasks and his RFC determination that Claimant can perform simple tasks. (*Id.*). Because ALJ Oetter does not explain this discrepancy, Claimant argues meaningful judicial review cannot be conducted to determine whether substantial evidence supports his decision. (*Id.*).

The Commissioner maintains ALJ Oetter's evaluation of Dr. Fishkoff's opinion is supported by substantial evidence in the record in that ALJ Oetter overall found the opinion was "not highly persuasive" as it was based largely on Claimant's subjective complaints. (DN 20, at PageID # 1135-36). Additionally, the Commissioner asserts ALJ Oetter sufficiently accounted for Dr. Fishkoff's finding that Claimant's concentration was impaired by including a limitation in the RFC as to no assembly line work involving production rate pace. (*Id.*). The Commissioner explains that Dr. Fishkoff's finding as to Claimant's concentration deficits is not a functional limitation and, regardless, does not undermine the RFC. (*Id.* at PageID # 1136-37). Because Claimant fails to point to any functional limitations from Dr. Fishkoff that ALJ Oetter fully credited but omitted from his RFC, the Commissioner concludes ALJ Oetter adequately evaluated Dr. Fishkoff's opinion in the context of the entire record. (*Id.* at PageID # 1137).

In reply, Claimant maintains that ALJ Oetter never made a connection between the evidence cited in his opinion and his ultimate decision to alter Dr. Fishkoff's concentration limitation. (DN 21, at PageID # 1142-43).

Dr. Fishkoff evaluated Claimant on January 31, 2023. During the examination, Claimant was able to recall only three of five objects after a delay, lost his train of thought after performing only one item on the serial 7s test, and completed serial 3s at a fair pace. (Tr. 788-794). Dr. Fishkoff determined Claimant had below average concentration and diagnosed Claimant with depressive disorder and generalized anxiety disorder. (*Id.*). She made the following findings regarding Claimant's mental functioning:

> His ability to tolerate frustration, conform to social standards as well as maintain employment is severely impaired.
>
> His ability to understand, retain and follow instructions as would be required over an eight-hour workday, or 40-hour workweek is moderately to severely impaired.

His ability to sustain attention to perform simple and repetitive tasks as would be required over an eight-hour workday, or 40-hour workweek, is severely impaired.

A history of impaired personal relationships was denied.

Lastly, his ability to tolerate the tress and pressures associated with day-to-day work activity is severely impaired.

(*Id.*).

ALJ Oetter evaluated Dr. Fishkoff's opinion in the RFC as follows:

In January 2023, Dr. Fishkoff opined the claimant's ability to tolerate frustration and conform to social standards, as well as his ability to sustain attention to perform simple and repetitive tasks, was severely impaired. She found he was (undefined) moderately to severely impaired in understanding, retaining, and following instructions (Ex 7F). Dr. Fishkoff's opinion is not highly persuasive. It is partially supported by exam findings, showing impaired concentration. Her opinion as to his ability to handle frustration is consistent with mental health treatment notes showing he reported increased symptoms with subjectively defined stress (See, e.g., Ex 3F/18, 23, 40). However, the remaining limitations are not consistent with her exam findings, or with the overall evidence at OHO. For example, the claimant denied a history of impaired interpersonal relationships and his memory was intact during the consultative exam and in mental health appointments. (See, e.g., Ex. 3F/9; 7F; 8F/35, 39, 61; 10F/13, 63, 92). Instead, Dr. Fishkoff's opinion appears to be largely based upon the claimant's subjective complaints and does not have the benefit of a complete longitudinal objective record at OHO including some of the claimant and third-party statements concerning activities of daily living.

(Tr. 31-32). ALJ Oetter opined the following mental RFC limitations:

He can understand, remember, and carry out simple instructions, is capable of social interaction consistent with the level of giving or taking directions; can adapt to any changes in the workday routine; should have occasional public interaction; and no production rate pace of an assembly line job.

(Tr. 27).

The first question is whether ALJ Oetter found Dr. Fishkoff's limitation that Claimant would be severely limited in his ability to sustain attention to perform even simple and repetitive tasks persuasive, as Claimant alleges. Review of ALJ Oetter's analysis reveals he did not. ALJ Oetter's statement that Dr. Fishkoff's opinion was "partially supported by exam findings, showing

impaired concentration" does not correlate to a finding of persuasiveness. Nor does ALJ Oetter's rejection of certain of Dr. Fishkoff's limitations mean he deemed the remainder of Dr. Fishkoff's limitations persuasive. ALJ Oetter stated that Dr. Fishkoff's opinion was not highly persuasive. He then discussed how two areas from Dr. Fishkoff's opinion found some consistency with the treatment record and how two others were not consistent with her exam findings or the overall evidence of record. By adding analysis regarding several of the limitations from Dr. Fishkoff's opinion, ALJ Oetter did not alter his ultimate conclusion that the opinion was "not highly persuasive." In fact, ALJ Oetter provided additional context for discounting Dr. Fishkoff's opinion, explaining it was largely based on Claimant's subjective complaints and did not have the benefit of a complete longitudinal record. Nowhere in this analysis did ALJ Oetter explicitly or implicitly determine that Dr. Fishkoff's limitation that Claimant would be severely limited in his ability to sustain attention to perform even simple and repetitive tasks persuasive.

Second, there is no "unresolved discrepancy" between the evidence and ALJ Oetter's findings as to Claimant's concentration deficits that ALJ Oetter failed to explain or address. ALJ Oetter recognized evidence demonstrating Claimant's impaired concentration. Then ALJ Oetter limited Claimant in the RFC to understanding, remembering, and carrying out simple instructions. This limitation is supported by the existence of some exam findings showing Claimant had impaired concentration, which ALJ Oetter recognized and considered. Claimant fails to demonstrate how additional limitation in this area is warranted. ALJ Oetter adopted a functional limitation to accommodate some degree of impaired concentration, and such a finding is supported by substantial evidence in the record.

## IV. Order

Based on the above analysis, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:        Counsel of Record